Oh, 13 keesel. Third defendant then are doing on behalf hurting this. Thank you, Mr Wilson. Mhm. May it please the court. How do you reconcile your brief with Bennett as on as far as the 6 51 issue, Bennett relied on people versus Richmond and in Richmond, the Supreme Court made almost a passing statement on an issue that doesn't appear to have even been briefed in that case. Since Richmond, the only Supreme Court has decided the people versus Suarez case and in Suarez, the Supreme Court said that the fact that a attorney takes a pro se petition and amends that petition does not prove that they comply with rule 6 51 that they have to file a certificate in addition to filing the revised petition that of the record has to reflect or the record has to reflect. Correct. So in other words, despite amending a petition that does not show compliance with rule 6 51 and to know his argument is that if amending a petition doesn't show compliance with rule 6 51 taking a pro se petition, amending that petition. How does filing a amended petition after counsel is filed the initial petition show compliance with rule 6 51. What's your interpretation of how the Supreme Court's decision of people versus Mitchell applies here? That was subsequent to Richmond. It was subsequent to Richmond. Mitchell to me was limited by Suarez. Uh, Mitchell seemed to take the position that if counsel, uh, is that the Mitchell was the issue? What? Whether the provision of 6 51 C were compliant with the defending claims, the issue was the section where the attorneys required to put petitioners claims in appropriate legal form. Right. Supreme Court said, quoting Mitchell as defendant did not file a pro se petition. His attorneys could not have violated their provision. That's correct. Does that not indicate that perhaps Richmond is still the law? I don't think so. And the reason I say that is if you think practically about rule 6 51 rule 6 51 requires where you have a pro se petition that's been filed, the attorney to amend that petition, the attorney to consult with the defendant and the attorney to review the, uh, the file transcripts in that case under the state's interpretation of it. And as the Supreme Court has somewhat set that rule forward, there would be two different standards that apply to petitions that were filed by pro se petitioners and petitions that were filed by an attorney. In essence, what the taking Richmond and Mitchell to their logical conclusion, if a petition is filed by pro se defendant, you're required to comply with rule 6 51 and speak, consult with the defendant and review the drop or file of the transcripts, the requirements of rule 6 51. But if the attorney files that initial petition, you don't have to do any of that. That's that's what Richmond implied. That's what Mitchell right. And that's what C 51 C says, because it says pro se. Does it not use the words pro se? It does use the word pro se uses the word pro se in the first sentence of or in one sentence of rule 6 51. There are two sentences that are important there. The second sentence, unlike the first, doesn't mention the word indigent. The second sentence of rule 6 51 doesn't say the record filed in that court shall contain showing which may be shown by the certificate of the indigent petitioner's attorney. Have the Supreme Court wanted that second rule only to apply to indigent petitioners. The court would have said that and based on the interpretation of people versus for us and how you can't have these ruling standards between the petition is filed pro se petition is filed by counsel. Why can't you were the same only different? Well, it's it lessens the standard that an attorney must abide by when they amend that petition. A defendant, just because he retains an attorney, doesn't give up his right to consult with that attorney or have the attorney review all the relevant documents is necessary in order to file a petition. You know what you are doing this? You know, there's a lot of intuitive, a lot of intuitive and logical appeal to it from a philosophical and public policy standpoint. Sure. I think, you know, I find myself compelled to sort of agree with your position, your position. The problem I'm having is this is a Supreme Court rule and the state, I presume, is going to wait. Bennett because Bennett says, quote unquote, there is no way, no way to interpret the Richmond's court's words as meaning other than rule 651 C is inapplicable proceedings when counsel filed the petition. Sure. So can you call our attention to a case that indicates the opposite? Other than Suarez, I cannot, you know, and essentially the argument is this intuitive sort of argument that it doesn't make sense to have two different appeals here, right? The one fact though, as to Bennett, is this court was very reluctant to follow Richmond in that case. This court said it had, you know, concerns about applying it to that situation. And given the evolving nature of the case law, it wouldn't seem absurd to say, well, in light of Suarez, which says that, you know, the mere amending of a pro se petition doesn't show rules 651 C compliance, the filing of the initial petition by counsel that they later amended doesn't show compliance either. Should we tell the Supreme Court what one of their rules mean or should they tell us what one of their rules mean? I think the Supreme Court should tell us what the words mean, but I think there's also a reasonable interpretation that would lead this court to find that a retained attorney has to comply with rule 651 C, even if they filed the initial petition. And one thing as well, if I may, another kind of post-conviction hearing act, there are somewhat stringent guidelines that apply to timeliness and things of that nature. Transcripts are expensive. Sometimes an attorney running up against a deadline may very well file a petition just to get it on file thinking, well, I can go back later. I can review the trial record. I can talk to my client later. I need to get this on file now. And in that situation, there would be no requirement under the current interpretation of rule 651 C, there would be no requirement for the attorney to ever consult with the client or review the trial court file. Let me ask you this, and I'm really curious about this. What is the genesis, do you believe, the historical basis for this rule? Obviously, when the Supreme Court drafted their rule, they could have said, they didn't have to say pro se, they could have anticipated the situation and they could have drafted in a way that would apply whether it was filed by counsel or whether it was filed pro se, but they didn't. In all these years, nothing has changed. So did they not, I mean, is Bennett hinted, did they think that because counsel filed it, there was a level of expertise and accountability that removed it from the pro se consideration? Why did this rule develop this way? The genesis, as far as the case law is concerned, is the court was concerned about the filing of pro se petitions and wanted to make sure the pro se litigants were properly represented. I would very much like to give this court a in-depth history of the rule. You don't know offhand why they... Well, I actually, one of the few times in my legal career, I went over to the Elmhurst Supreme Court library to look at the rules committee notes for rule 651C and they don't go back past the early 90s. So the Elmhurst Supreme Court doesn't have any additional information regarding the genesis of the rule. But certainly, at least as a practitioner, I see petitions being filed by counsel. And to me, again, it doesn't make sense to give a counsel less rights than a litigant who doesn't have the money to afford an attorney. And that's essentially this dichotomy that exists under Richmond and Mitchell and Suarez now. That's essentially where we stand with it. Are you suggesting that the rule as written violates the 14th Amendment of the U.S. Constitution? I'm not making that argument. Because we're being recorded. So you have to... I wouldn't put it past myself to make that argument. But in this case, I'm not making that argument. The dueling standards concern me, though. And that's why it's been raised in this briefcase. And that's why we're asking this court to address that point. I don't know other questions relative to that issue. Ann, would you like to cover the first issue that you filed? I would. Thank you. Teola filed a supplemental petition for post-conviction relief making a claim of actual undiscovered evidence. And he attached two affidavits to that petition, one from Calvin Stewart and one from Gregory Warfield. Calvin Stewart was an intended victim of the shooting at issue in this case. And Gregory Warfield was a witness to at least part of the shooting in this case. Either of these affidavits, and this is the People v. Molstead standard, either of these affidavits would create new questions in the mind of the trier of fact and go to the ultimate issue of who's responsible for the shooting at issue in this case. And that's why we're asking for this case to be remanded for an evidentiary hearing. I can't emphasize the importance of Calvin Stewart's affidavit enough. Calvin Stewart was an intended target of the shooting. He saw four men approach him. He states in his affidavit he clearly saw their faces. He'd known Teola Jordan for many years, and Teola was not one of the men who was shooting at him. He is a first person, a current witness that no one's ever heard from up to this point. He's sworn in his affidavit, which we may, which we must take as true because we're at the second stage of post-conviction proceedings. He's sworn that he wouldn't have talked to any investigators or any defense investigators had they come asking questions. And in fact, in his affidavit, he says, I avoided speaking to anyone about this. Additionally, even though, as the court stated, while it was dismissing the petition for post-conviction relief, Calvin Stewart's name was listed as a potential state's witness with the address of Aurora, there's no information that anyone really knew where he was. So it would have made serving him, serving a witness who you can't find, impossible. The People v. Washington case said that a witness's testimony that could not have been discovered through the, could not have been where the witness couldn't be found at the time of trial. And it certainly seems like Calvin's representation in his sworn affidavit that he was avoiding anyone, avoiding anyone from the defense or the state. Well, did the petition filed by the defendant cover what you just argued? That the reason why Calvin's affidavit is so important is because he wasn't locatable? The, it is not in the, do you think it might be if a lawyer complied with the full parameters of 651C? I think, I think maybe very well it could. The other concern, I'm sorry, going back to the 651C argument for a moment, is it appears that there could be a conflict in this case as well. And you have a case where a witness wasn't sought out by post-conviction counsel who initially was representing all three of the Jordan brothers. And had this witness been found by post-conviction counsel, he may very well have, or have been found prior to this post-conviction petition. Pardon me. He may very well have offered incriminating evidence as to the other brothers. He doesn't say in his affidavit that Teal was two brothers out there.  Once counsel withdrew as the attorney for the other two defendants and solely represented Teal. They did argue during the hearing, though, that his testimony had never been heard from. The defense investigator had attempted to speak with him and Calvin Stewart said, don't come back here or else. Notably, when the defense investigator talked to Mr. Stewart or tried to speak with Mr. Stewart, it was just happenstance that they ran into each other. There's no evidence that Mr. Stewart was living at the residence where the investigator encountered him. Like or unlike Calvin Stewart's affidavit, Gregory Warfield did testify at trial and he has come forward now and said that his testimony wasn't accurate. That it was based on his assumption that because the other Jordan brothers were present, that Teal must have been there as well. His affidavit is significant as well, especially looking at this court's decision in the Rule 23 order on direct appeal in this case. When evaluating the sufficiency of the evidence that was presented, when evaluating if the prosecution's arguments prejudiced the defendant, this court routinely said, well, Gregory Warfield identified the defendant as being present at the scene of the shooting. Ronald Green identified the defendant as being present at the shooting. This is sufficient evidence to justify this conviction. Well, now if you look at the current posture of this case, Gregory Warfield is no longer a viable state's witness here. He has partially recanted, and I say partially only because he hasn't recanted his statement that, you know, he was present on the day of the shooting, that he saw Teal and his brothers. He's merely said, Teal wasn't there. So no longer do we have testimony to rely on as proof that Teal was present at the scene of this offense. But now we also have Calvin Stewart's testimony in his affidavit where he says, you know what? I was present. I was the one being shot at. He wasn't like Gregory Warfield or any of the other witnesses at Warfield's house that were ducking for cover while the bullets were being fired by a fourth person. He saw who was shooting at him, and Teal was not there. He made a statement, right? He testifies to that? Or I mean, submitting the affidavit for the statement that I find? Warfield or Stewart testifies, yes, that he saw that there were four men approaching him. He could clearly see their faces. He's known Teal for something like 18 years. And he said, Teal was not there. You can finish. Yeah, thank you. So what we have in this case, if this court remembers the case on direct appeal, was the fact that we had numerous alibi witnesses placing Teal clear across Aurora at the time of the incident. And we had several individuals with somewhat wavering testimony saying, oh, no, he was present at the scene of the shooting. That is not the case anymore. We have a witness that specifically says he wasn't there. A witness no one's ever heard of, heard from. And that's why we asked this court to remand it for a third stage evidentiary hearing. Thank you. Miss Diaz. Good morning, Your Honors. Counsel, may it please the court, Aileen Diaz on behalf of the state of Illinois. I would like to start with issue two, if that's okay. We stand in our brief. We think the case law adequately interprets 651 C. We don't think there's any conflict, and I have nothing to add unless there are any further questions. I do. What about the fairness issue? I mean, let's assume that in Mitchell, the court says counsel would not be required to make amendments within the purview of 651 C. Is it fair that the counsel appointed, retained, is removed from the obligation to at least talk to the client and look at the trial record? Is that fair to you? I don't think that that's necessarily implied that counsel doesn't have that obligation. Well, if he doesn't file a 651 C certificate, how could he have the obligation? How does anybody know if he's ever even talked to the client? Well, I think it's safe to presume that he's talked to the client if he's filed a post-conviction petition. If it's safe to presume, then why do we make a second counsel do it? Why can't we just assume that every attorney is going to comply with this? If your position was we can assume that if an attorney filed the first post-conviction, of course they looked at the record, of course they talked to their client. Why don't we make that assumption when a pro se files the first petition? Why don't we just let them go ahead and amend it, but assume that they talked to their client, read the record, etc.? I can't answer that. And while I will say that maybe the fairness arguments are compelling, or may be compelling. So they are logically compelling, aren't they? They may be. The rule also says the record may reflect that there has been compliance with the rule. I think it's clear that the certificate was not filed. Would you wish to comment on whether or not the record reflects that there was compliance with the rule? I know that the attorneys originally filed post-conviction petitions for all three defendants and then removed themselves from Stephen and Derek's cases. So I think that that indicates that there was some discussion with the defendant before filing the supplemental petition. Now, I don't have a timeline as to that. You're saying why would he have filed it if he hadn't discussed it with somebody? Right. Or why would he have withdrawn? Why would he have withdrawn had he not been familiar with the issues or had a discussion with his client in between filing the first petition and then the supplemental petition? But it's only an inference you're drawing. There's nothing specifically in the record that indicates that? No. If he was withdrawing because of a conflict of interest, would he possibly or probably discuss this hypothetical conflict with his client to see if his client was willing to waive the conflict, if in fact it was something that was waivable by the client? I'm sorry, could you repeat that? If the conflict was something that the defendant client could have waived, then how do we know whether or not the attorney discussed possible waiver with the defendant? There was nothing in the record indicating that he discussed possible waiver with the defendant. What the defendant's brief cites to is a rule that requires the attorney to consult with former clients that he has represented. And he did here consult with Derek and Steven and they waived the conflict. Mr. Wilson cited to Suarez in response to questions regarding people being Mitchell. Have you had an opportunity to review Suarez? And would you like to rebut or respond to Mr. Wilson's interpretation of Suarez? I understand Mr. Wilson's arguments regarding fairness and I understand his arguments pertaining to Suarez as it regards fairness. But the law currently, I mean, Well, is it fairness or equity? Because equity suggests that you do the same thing to everybody, which means you can screw everybody equally, okay? Whereas fairness relates to something rather beneficial or ameliorating or nice. So it's not so much fairness, it's equity. Are you going to treat everybody the same or not? Because this rule could be draconian. And if it were, and it was written in the way it appears to be presently, we're more concerned with equity, are we not, rather than whether it's fair? Well, okay, if we're concerned with the people. People want, they don't want justice because if they got justice, they probably wouldn't like what they got. But what they want is they want to be treated equally with other people. And they see other people getting lesser penalties or punishment than they do. So other than this short soapbox discussion, please understand we're talking about not so much fairness, but whether or not the pro se with appointed counsel is being treated the same or differently than someone with retained counsel or vice versa. Right. And the Supreme Court has had time to review that since Richardson. In Mitchell, this court reviewed it in Bennett and expressed some concern. But I understand the concerns you're expressing regarding equity, but I disagree that they aren't being treated the same. I do think that if counsel prepares the initial petition, I think there's less of a need. Why is that? What are you basing it on? Let's open it up and be candid and blunt here. What's the difference? The difference is following a direct appeal, let's say. Defendant wants to file a post-conviction petition and he hires counsel. There has to be some discussion. I mean, there has to be some discussion regarding what happened in order for counsel to file that post-conviction petition. So you're saying the accountability is the professional relationship at the outset? Is that what takes it out of the requirements when you have a pro se? The accountability of the attorney? Yes. Yes. I'm sorry, it's the rules of professional conduct then, not 651, that ensures that this defendant has appropriate representation. I would agree with that, yes. Well, there had to be some basis for the court to have a distinction between retained and appointed and pro se, right? I mean, there must have been some basis for the rule being constructed the way it is. Well, I think the plain language of the rule. Well, I think a lot of the case law, it's just the Supreme Court case, Bennett and then Mitchell again. It's based on the plain language of the law or the statute, or not the statute, the Illinois Supreme Court rule. So your position is very simple. There's no case law that actually comes out and supports this position. Is that what you're saying? I mean, yeah, that's why. I stand on my brief. There's nothing to prevent us from changing or extending the rule, is there? Well, in doing that, you would disagree. You would be going against Supreme Court case law. I have that concern. He would say the word not. And how is that? May I ask your honor? I would say that absence of evidence is not evidence of absence. And Mitchell doesn't address particular facts in this case. And therefore, to say that because Mitchell doesn't discuss a holding or a rationale de sedende relative to the facts in this situation, we should not assume that their response or their holding would be in the negative or in the positive. We would have to rationalize and come to our own conclusion as to what the Supreme Court might do, add the facts, and the arguments, and the law being presented to them in that particular case. Does that sound a good rationale as to why I might disagree? You don't have to answer the question. Okay, thank you. Would you like me to move on to issue one, or do we- Why don't you address the first argument that was raised in recantations in one, and the exonerating testimony of first impression? Well, first of all, the evidence in order to support the claim of actual innocence has to be newly discovered evidence, the way he pled it in his post conviction or the supplemental post conviction petition. Newly discovered evidence is evidence that's not available at trial and couldn't have been discovered through due diligence. It's evidence that's material and non-cumulative, and evidence that is of such conclusive character that it would have likely changed the result on retrial. Here, Gregory Warfield's affidavit is newly discovered evidence because it just says, I mean, he's going completely against what he testified to at trial. I mean, there's nothing that says that would, there's nothing that suggests that with due diligence, defendant could have obtained the information provided in this affidavit during the time of trial. However, Gregory Warfield's affidavit is also complete recantation. I disagree with counsel. It's a complete recantation of what he testified to at trial and of the information that he provided to the officers. And as the Illinois Supreme Court has repeatedly said, recantation testimony is inherently unreliable and should not warrant or should not lead to a retrial absent extraordinary circumstances. We don't have extraordinary circumstances here. As far as Calvin Stewart's affidavit, I absolutely disagree that it is newly discovered evidence. Defendant sent a private investigator to Calvin Stewart. Calvin Stewart refused to cooperate with the private investigator. That to me, given these circumstances, is not due diligence. The state disclosed Calvin Stewart as a possible witness. No, the state did not call Calvin Stewart, but the state can put on the case however it wants to put on the case. Defendant could have asked the trial judge, given the fact that Calvin Stewart was one of the victims. Defendant could have asked the trial court judge for a subpoena. Not a subpoena for Calvin to testify at trial without defense counsel knowing what he would have said, but a subpoena for pretrial purposes. He said in his affidavit that he would not have complied with the private investigator, that he was not contacted by police, and that he was not contacted by the state. However, nothing in his affidavit suggests that he wouldn't have shown up to court had he been subpoenaed. Doesn't the lack of due diligence raise the specter of ineffective counsel? It may. It's not how it was raised here, but it may. Well, whose responsibility is it to bear a defense in the case? Well, it was his counsel's responsibility. Well, then, who other than counsel would be deemed ineffective? If it's not counsel who's ineffective, or at least alleged to be ineffective. Because when you suggest that it isn't counsel, but you're suggesting that somebody has been negligent by failing to be diligent, you're making an oblique reference to someone who as yet is, or at present, is anonymous. And I was requesting an indication of who this anonymous person might be. I would agree with your honor that the anonymous person would, in fact, be defense counsel. Thank you. So Calvin, they could have issued a subpoena. They didn't. In my brief, I did say that this evidence was cumulative. However, in going through Ortiz and in preparing for this oral argument, I would like to change my position. Because in Ortiz, the Supreme Court, the Illinois Supreme Court, did say that even if a defendant provides an alibi witness at his trial, which he did here, he provided Latrina, which was his girlfriend, and he provided Bobby Tenor, the neighbor, and he testified that he was not at the scene of the crime. But the Illinois Supreme Court held in Ortiz that even if defendant provides an alibi witness at trial, and the affiance and the post-conviction petition provide information, eyewitness information that contradicts the information, the eyewitness information provided by the state at trial, then it's considered to be non-cumulative. So arguably, yes, this is non-cumulative. So I would change my position on that. That being said, it is not material. It would not probably change the result on trial. Because here, we have the testimony of Ronnie Green, who was one of the victims. Ronnie Green, in talking to the officers who arrived at the scene 15 minutes after the crime, Ronnie Green told the officer, I don't know, Potschweit, I would say. I believe that's his name. He told Officer Potschweit. May I continue, or? Thank you. Is your name spelled with a Z or an S? It's with an S. Okay, which is plural for days, right? D-S? It is. Okay. They had it spelled with a Z. That's the reason we pronounced it the way I did. I would have said D-S if I had known. Everybody perfectly spells it with a Z. It's common. Okay. All right. Thank you. Thank you, Your Honors. So for those reasons, we ask you to affirm the petition. Thank you. Mr. Wilson. I'd just like to make a couple of comments on Issue 1 before I move on to Issue 2 briefly. You were discussing the ineffectiveness of counsel. And I think in many ways this case can be described as a mess. You have the potential conflict issue. You have one counsel representing all three defendants at trial. Potentially that's why Calvin Stewart's affidavit hasn't, or the information in Calvin Stewart's affidavit hasn't come to light to this date. But one way to remedy the concern, if there has been due diligence, is to remand this case for a third stage hearing where post-conviction counsel can call defense counsel and ask defense counsel, what did you do? Did you look for him? Did you try and find an address? Counsel, logistically, why if your claim that the 651C was error, why wouldn't we remand it back for a second stage hearing such that the lawyer could consult with his client and do whatever it was that he felt was appropriate after his consultation instead of jumping into a third stage? Issues 1 and 2 are really alternative arguments. So either remedy would be fine if this court wanted to go ahead and remand it for that second stage proceeding to find out what counsel had heard. So if we grant relief under 651, we're talking a second stage, and if we grant relief under the first argument, we'd be talking third stage? That's correct. And importantly, I don't remember if it was Ms. Diaz or if it was this court asked, you know, how could the attorney file an initial petition, a retained attorney file an initial petition if they didn't talk to the defendant? Lots of attorneys talk to each other. Post-conviction counsel calls up defense counsel and says, hey, tell me, I've been retained to file a post-conviction petition here. Tell me what happened in this case. There are many ways that counsel could have filed this petition without even having to talk to the defendant. And that's where the problem lies, as this court and the attorneys have discussed here today. This, in fact, is there anything in the record that reflects what you've just related to us? In other words, I can't tell whether what you're doing is making argument or referring to the record as to how this was handled in this case. Sure. That is just me making argument. There's nothing in this record indicating that counsel, you know, just spoke to defense attorney, the defense attorney. But the problem is we don't know, and there's no indication in this record, you know, the exception to Rule 651C, there's no indication in this record that counsel complied with it outside of filing a certificate. This court, during the state's argument, called Calvin Stewart's affidavit exonerating testimony. And that's exactly what it is in this case. Calvin Stewart is, I would argue, the most important witness that's come to speak about this case to date. Was he on the state's list of witnesses? He was, yes. How do you respond to her argument? Well, everybody knew he was a potential witness. Somebody should have talked to him. There's no evidence that they could have found him. And when they did try and find him, or when an investigator, as I discussed earlier, did find him, he essentially threatened the investigator. I believe he said, don't come back or else. In his affidavit, again, he not only says, I wasn't going to talk to the police or an investigator, he says, I was avoiding them. He was making a conscious effort not to talk to anyone about this case. We don't know why. Maybe he was involved in criminal activity at the time of the shooting and he was concerned about getting in trouble or being charged with that, and therefore he was trying to avoid everyone. Without having a third-stage hearing, if this Court doesn't agree with Issue 2 and remains it for Issue 1, we need to have a third-stage hearing in order to answer these questions and determine what weight a jury would have placed on this evidence. Because, again, what we're looking at in a post-conviction petition isn't necessarily whether the defendant is guilty or innocent. We're looking at whether the defendant was afforded all of his constitutional rights. And part of that is, due process says you shall not be convicted of an offense unless you are guilty of that offense. And Teal has put forth significant evidence, both, again, by Calvin Stewart's affidavit, who was one of the victims of the shooting, and who says that he saw the faces of the people. He wasn't diving for cover. He was trying to figure out who was shooting at him and trying to get away. And now Gregory Warfield, again, who this Court relatively heavily relied upon in its Rule 23 order on direct appeal, has said, I was wrong. I was mistaken. I didn't see Teal there. These are significant reasons that this case needs to be remanded for a third-stage hearing so we can have these questions answered and we can find out what impact this evidence would have had overall on the trial evidence. Again, especially because Teal had so many alibi witnesses who were mere acquaintances of his who placed him clear across Aurora at the time of this shooting. There are significant questions in this case, both from the standpoint of Teal's innocence and from the standpoint of whether post-conviction counsel complied with Rule 651C and performed the duties that they were required to do. So for those reasons, we would ask this Court to either remand it for a second-stage hearing or remand it for a third-stage evidentiary hearing. Any questions? Thank you. We have another case on the call. There will be a short recess. Thank you.